Page 1 of 44

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JANET SCHWANINGER as                    )
Administratrix of the Estate            )
of ELIZABETH SCHAAF,                    )
Deceased,                               )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )     Case No. 3:15-cv-00858
                                        )
HYUNDAI MOTOR COMPANY, a                )
foreign corporation; HYUNDAI MOTOR      )
AMERICA, a California corporation;      )
HYUNDAI AMERICA TECHNICAL               )
CENTER, INC., a Michigan corporation;   )
HYUNDAI CORPORATION (USA), a            )
Delaware corporation; HYUNDAI ENG       )
AMERICA, INC., a California corporation; )
AUTOLIV MANDO CORPORATION, a            )
foreign corporation; <u>AUTOLIV</u>      )
<u>CORPORATION, a foreign corporation</u> )
AUTOLIV, INC., a Delaware corporation;  )
AUTOLIV ASP, INC., an Indiana           )
corporation; AUTOLIV AB, a foreign      )
corporation; AUTOLIV SAFETY             )
TECHNOLOGY, INC., a Delaware            )
corporation; <u>AUTOLIV HOLDING, INC.,</u> )
<u>a Delaware corporation</u>; PHC        )
MANUFACTURING PVT LTD., a foreign       )
corporation; PHA INDIA PRIVATE          )
LIMITED, a foreign corporation; PYEONG  )
HWA AUTOMOTIVE CO., LTD, a foreign      )
corporation; KEY SAFETY SYSTEMS,        )
INC., a Delaware corporation; KEY       )
AUTOMOTIVE OF FLORIDA, LLC, a           )
Delaware company; <u>HYUNDAI MOBIS</u>   )
<u>CO., LTD., a foreign corporation; MOBIS</u> )
<u>ALABAMA, LLC, a Delaware company;</u>  )
<u>MOBIS AMERICA, INC., a Delaware</u>    )
<u>corporation; MOBIS PARTS AMERICA,</u>  )
<u>LLC, a Delaware company; MOBIS PARTS</u> )
<u>MIAMI, LLC, a Delaware company;</u>    )

| | |
|---|---|
| AMERICAN AUTOPARTS, INC., a | ) |
| Delaware corporation; MOBIS NORTH | ) |
| AMERICA, LLC, a Delaware company, | ) |
| | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

### INTRODUCTION

Jurisdiction lies pursuant to 28 §§ U.S.C. 1332, diversity of citizenship.

### ALLEGATIONS COMMON TO ALL COUNTS

1.      This is an action to recover damages for the wrongful death of ELIZABETH

SCHAAF, who suffered fatal injuries in an August 6, 2013 rollover accident.

2.      Plaintiff JANET SCHWANINGER is a citizen of Illinois and is the grandmother

of the deceased ELIZABETH SCHAAF.   Ms. Schwaninger is the Independent Administratrix of

the Estate of Elizabeth Schaaf, deceased. She brings this action individually and in her

representative capacity as Independent Administratrix of the Estate of Elizabeth Schaaf, deceased.

JANET SCHWANINGER resides in Dow, Illinois.

3.      The decedent, ELIZABETH SCHAAF, was a citizen of the State of Illinois at the

time of her death.

4.      JANET SCHWANINGER brings this action pursuant to provisions of the Illinois'

Wrongful Death Act and 735 ILCS 5/13-209.

5.      At all relevant times, Defendant HYUNDAI MOTOR COMPANY was and is a

foreign corporation doing business in Illinois, with its principal place of business located in Seoul,

South Korea.

6.      At all relevant times, Defendant HYUNDAI MOTOR AMERICA was and is a

California corporation authorized to do business in Illinois, with its principal place of business believed to be located in Fountain Valley, California.

7.     At all relevant times, Defendant HYUNDAI AMERICA TECHNICAL CENTER, INC. was and is a Michigan corporation doing business in Illinois, with its principal place of business located in Superior Township, Michigan.

8.     At all relevant times, Defendant HYUNDAI CORPORATION (USA) was and is a Delaware corporation doing business in Illinois with its principal place of business believed to be located in Englewood Cliffs, New Jersey.

9.     At all relevant times, Defendant HYUNDAI ENG AMERICA, INC. was and is a California corporation doing business in Illinois with its principal place of business believed to be located in Irvine, California.

10.     HYUNDAI MOTOR COMPANY, HYUNDAI MOTOR AMERICA, HYUNDAI AMERICA TECHNICAL CENTER, INC., HYUNDAI CORPORATION (USA), and HYUNDAI ENG AMERICA, INC. are hereinafter collectively referred to as the "HYUNDAI DEFENDANTS."

11.     The HYUNDAI DEFENDANTS designed, tested, engineered, approved, manufactured, assembled, supplied, marketed, distributed, and sold the Hyundai Accent and its components which are the subject of this litigation.

12.     Upon information and belief, one or more of the various HYUNDAI DEFENDANTS named above is a subsidiary and/or wholly owned subsidiary of the South Korean corporation, HYUNDAI MOTOR COMPANY.

13.     Upon information and belief, at all relevant times the HYUNDAI DEFENDANTS,

and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their Hyundai co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that all of said acts were subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

14.     At all relevant times, Defendant AUTOLIV MANDO CORPORATION was and is a foreign corporation doing business in Illinois with its principal place of business believed to be located in South Korea.  Upon information and belief, AUTOLIV MANDO CORPORATION may also be known as AUTOLIV-MANDO CORPORATION.

15.     At all relevant times, Defendant AUTOLIV CORPORATION was and is a foreign corporation doing business in Illinois with its principal place of business believed to be located in South Korea.

16.     At all relevant times, Defendant AUTOLIV, INC. was and is a Delaware corporation doing business in Illinois with its principal place of business believed to be located in Stockholm, Sweden.

17.     At all relevant times, Defendant AUTOLIV ASP, INC. was and is an Indiana corporation authorized to do business in Illinois with its principal place of business believed to be located in Ogden, Utah.

18.     At all relevant times, Defendant AUTOLIV AB was and is a foreign corporation doing business in Illinois with its principal place of business believed to be located in Stockholm, Sweden.

19.     At all relevant times, Defendant AUTOLIV SAFETY TECHNOLOGY, INC. was

and is a Delaware corporation doing business in Illinois with its principal place of business believed to be located in Auburn Hills, Michigan.

20.    At all relevant times, Defendant AUTOLIV HOLDING, INC. was and is a Delaware corporation doing business in Illinois with a principle place of business believed to be located in Stockholm, Sweden and/or Delaware.

21.    AUTOLIV MANDO CORPORATION, AUTOLIV CORPORATION, AUTOLIV, INC., AUTOLIV ASP, INC., AUTOLIV AB, AUTOLIV SAFETY TECHNOLOGY, INC., and AUTOLIV HOLDING, INC. are hereinafter collectively referred to as the "SEATBELT DEFENDANTS."

22.    The SEATBELT DEFENDANTS designed, tested, engineered, approved, manufactured, assembled, supplied, marketed, distributed, and sold front passenger seat restraint systems and their components for incorporation into Hyundai Accent vehicles, including the Hyundai Accent which is the subject of this litigation.

23.    Upon information and belief, one or more of the various SEATBELT DEFENDANTS named above is a subsidiary and/or wholly owned subsidiary of AUTOLIV, INC..

24.    Upon information and belief, at all relevant times the SEATBELT DEFENDANTS, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their Seatbelt co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that all of said acts were subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

25.    At all relevant times, Defendant PHC MANUFACTURING PVT LTD. was and is

a foreign corporation doing business in Illinois with its principal place of business believed to be located in Sriperumbudur, India.

26. At all relevant times, Defendant PHA INDIA PRIVATE LIMITED was and is a foreign corporation doing business in Illinois with its principal place of business believed to be located in Sriperumbudur, India.

27. At all relevant times, Defendant PYEONG HWA AUTOMOTIVE CO., LTD. was and is a foreign corporation doing business in Illinois with its principal place of business believed to be located in Sriperumbudur, India.

28. PHC MANUFACTURING PVT LTD, PHA INDIA PRIVATE LIMITED, and PYEONG HWA AUTOMOTIVE CO., LTD will hereinafter be referred to as the "DOOR LATCH DEFENDANTS."

29. The DOOR LATCH DEFENDANTS designed, tested, engineered, approved, manufactured, assembled, supplied, marketed, distributed, and sold front passenger door latch systems and their components for incorporation into Hyundai Accent vehicles, including the Hyundai Accent which is the subject of this litigation.

30. Upon information and belief, one or more of the various DOOR LATCH DEFENDANTS named above is a subsidiary and/or wholly owned subsidiary of the Indian corporation, PYEONG HWA AUTOMOTIVE CO., LTD.

31. Upon information and belief, at all relevant times the DOOR LATCH DEFENDANTS, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their Door Latch co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that all of said acts were

subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

32.     At all relevant times, Defendant KEY SAFETY SYSTEMS, INC. was and is a Delaware corporation doing business in Illinois with its principal place of business believed to be located in Sterling Heights, Michigan.   Upon information and belief, KEY SAFETY SYSTEMS, INC. was formerly known as BREED TECHNOLOGIES, INC. and/or ALLIED SIGNAL, INC..

33.     At all relevant times, Defendant KEY AUTOMOTIVE OF FLORIDA, LLC was and is a Delaware company doing business in Illinois with its principal place of business believed to be located in Lakeland, Florida. Upon information and belief, KEY AUTOMOTIVE OF FLORIDA, LLC was formerly known a KEY AUTOMOTIVE OF FLORIDA, INC. and was converted from a corporation to an LLC in January 2013.

34.     At all relevant times, Defendant HYUNDAI MOBIS CO., LTD was and is a foreign corporation doing business in Illinois with its principal place of business believed to be located in Seoul, South Korea.

35.     At all relevant times, Defendant MOBIS ALABAMA, LLC was and is a Delaware company doing business in Illinois with its principal place of business believed to be located in Montgomery, Alabama.

36.     At all relevant times, Defendant MOBIS AMERICA, INC. was and is a Delaware corporation doing business in Illinois with its principal place of business believed to be located in Montgomery, Alabama.

37.     At all relevant times, Defendant MOBIS PARTS AMERICA, LLC was and is a Delaware company authorized to do business in Illinois with its principal place of business

believed to be located in Fountain Valley, California.

38.     At all relevant times, Defendant <u>MOBIS PARTS MIAMI, LLC</u> was and is a Delaware company doing business in Illinois with its principal place of business believed to be located in Miami, Florida.

39.     At all relevant times, Defendant <u>AMERICAN AUTOPARTS, INC</u>. was and is a Delaware corporation doing business in Illinois.   Upon information and belief, AMERICAN AUTOPARTS, INC. is a subsidiary of and/or a holding company for Defendant HYUNDAI MOBIS CO., LTD.

40.     At all relevant times, Defendant <u>MOBIS NORTH AMERICA, LLC</u> was and is a Delaware corporation doing business in Illinois with its principal place of business believed to be located in Toledo, Ohio.

41.     KEY SAFETY SYSTEMS, INC., KEY AUTOMOTIVE OF FLORIDA, LLC, HYUNDAI MOBIS CO., LTD., MOBIS ALABAMA, LLC, MOBIS AMERICA, INC., MOBIS PARTS AMERICA, LLC, MOBIS PARTS MIAMI, LLC, AMERICAN AUTOPARTS, INC., and MOBIS NORTH AMERICA, LLC are hereinafter collectively referred to as the "AIRBAG DEFENDANTS."

42.     The   AIRBAG   DEFENDANTS   designed, tested, engineered, approved, manufactured, assembled, supplied, marketed, distributed, and sold front passenger side airbag systems and their components for incorporation into Hyundai Accent vehicles, including the Hyundai Accent which is the subject of this litigation.

43.     Upon information and belief, one or more of the various AIRBAG DEFENDANTS named above is a subsidiary and/or wholly owned subsidiary of the South Korean corporation,

HYUNDAI MOBIS CO., LTD..

    <u>44.</u>    Upon information and belief, at all relevant times the AIRBAG DEFENDANTS, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their Airbag co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that all of said acts were subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

    45.    On or about August 6, 2013, ELIZABETH SCHAAF was the properly seat-belted right front passenger in a Hyundai Accent HB, believed to be a model year 2007 with VIN KMHCN36C87U051522 (hereinafter "the Accent"), which was traveling westbound on Colorado Interstate 70.   At a point at or near mileage marker 317, the Accent is believed to have left the roadway and rolled over (hereinafter the "Subject Accident").

    46.    ELIZABETH SCHAAF suffered fatal injuries in the Subject Accident.

**COUNTS AGAINST HYUNDAI**

**COUNT I**

(*Strict Liability v. Hyundai Defendants*)

COMES NOW the Plaintiff, by and through her undersigned attorneys, and for Count I of her Complaint against the HYUNDAI DEFENDANTS, states:

    47.    Plaintiff incorporates herein all allegations made elsewhere in this Complaint as if set forth verbatim.

    48.    At all times material to this action, the HYUNDAI DEFENDANTS were in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and

supplying motor vehicles, including the Accent.

49.   At the time the Accent left the control of the HYUNDAI DEFENDANTS, it was defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following subparagraphs:

a.   The Accent was not crashworthy.

b.   The Accent lacked reasonable rollover crashworthiness protections.

c.   The Accent's overall design and "packaging" was inadequate to protect occupants during rollovers.   In the subject accident, ELIZABETH SCHAAF suffered fatal injuries because the Accent's various components, including the door, door-latch system, safety restraint system, and airbags, failed to provide reasonable protection during the rollover.

d.   The Accent's front passenger seatbelt system, including all of its components such as the belt webbing, retractors, anchors, and anchor points, as well as the overall design and geometry of the system, were inadequate to reasonably restrain and protect occupants when exposed to foreseeable crash forces in rollover accidents. Particularly, the seatbelt system permitted unreasonable and excessive excursion of occupants in rollover accidents.

e.   The Accent's seatbelt systems lacked excursion-mitigating devices, including but not limited to rollover-activated pretensioners, cinching latch plates, and/or seat integrated belts.

f.   The Accent's door and door latch system were inadequate to reasonably protect occupants during rollover accidents. Particularly, the door latch system's design and manufacture allowed and/or caused inadvertent release and allowed the door to open, thus creating a portal of ejection when subjected to foreseeable crash forces, including forces sustained during a rollover.

g.   The Accent's passenger side airbag and side airbag system were inadequate to reasonably protect occupants during rollover accidents.  Particularly, the airbag system improperly activated the door latch system, failed to retain occupants inside the vehicle, and/or caused occupants to be ejected from and/or trapped outside the vehicle when subjected to foreseeable crash forces, including forces sustained during a rollover.

h.   The Accent's design failed to include electronic stability control technologies which would assist drivers in maintaining control of the Accent.

i.   The Accent lacked alternative designs that could have provided better protection to occupants during rollovers.

j.   The Accent lacked adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the Accent and reasonable means to reduce such risks, dangers and harms.

50.   The Accent was expected by the HYUNDAI DEFENDANTS to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

51.   ELIZABETH SCHAAF was a person who would reasonably be expected to use the Accent.

52.     The defects in the Accent caused enhanced injuries to ELIZABETH SCHAAF that were over and above those injuries that would have been caused by the accident if there had been no defects in the Accent.

53.     The defects in the Accent were a proximate cause of the fatal injuries to ELIZABETH SCHAAF and of injuries and damages to the Plaintiff in an undetermined amount in excess of $75,000.

54.     As a direct and proximate result of the defective, unreasonably dangerous condition of the Accent, Plaintiff's Decedent, ELIZABETH SCHAAF, sustained injuries of a personal and pecuniary nature, including conscious pain and suffering prior to her death, and had she survived, she would have been entitled to bring this action for damages, and this action survives her pursuant to the provisions of the Survival Act, 755 ILCS 5/27-6.   JANET SCHWANINGER is the duly appointed Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, and she brings this cause of action, in part, pursuant to 735 ILCS 5/13-209.

55.     As a direct and proximate result of the defective, unreasonably dangerous condition of the Accent, ELIZABETH SCHAAF was killed, and her next of kin have been permanently deprived of her love, companionship, society, consortium, and support to which they were entitled, they have suffered grief, and have become liable for medical and funeral expenses all to their damages in a substantial amount.

56.     The HYUNDAI DEFENDANTS are strictly liable for the harms and losses suffered by the heirs of ELIZABETH SCHAFF, and for injuries suffered by ELIZABETH SCHAAF prior to her death, caused by defects and inadequacies in the design and manufacture of the Accent.

Page 13 of 44

**WHEREFORE**, Plaintiff JANET SCHWANINGER, individually, and as Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, demands judgment against the HYUNDAI DEFENDANTS, and all of them, for an amount in excess of $75,000.00 plus costs of suit.

## COUNT II

### (*Negligence v. Hyundai Defendants*)

COMES NOW the Plaintiff, by and through her undersigned attorneys, and for Count II of her Complaint against the HYUNDAI DEFENDANTS, states:

57.     Plaintiff incorporates herein all allegations made elsewhere in this Complaint as if set forth verbatim.

58.     At all times material to this action, the HYUNDAI DEFENDANTS were in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and supplying motor vehicles, including the Accent.

59.     The Accent was expected by the HYUNDAI DEFENDANTS to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

60.     ELIZABETH SCHAAF was a person who would reasonably be expected to use the Accent.

61.     The HYUNDAI DEFENDANTS had a duty to design and manufacture a vehicle that did not subject occupants to unreasonable risks of harm during reasonably foreseeable usage of the vehicle.

62.     The HYUNDAI DEFENDANTS had a duty to design and manufacture a vehicle that would adequately and reasonably protect occupants when exposed to foreseeable crash forces

in rollover accidents.

63.     The HYUNDAI DEFENDANTS had a duty to design and manufacture a vehicle with passenger safety restraint systems, door and door latch systems, side airbags and side airbag systems, and stability control systems that would adequately and reasonably protect vehicle occupants.

64.     The HYUNDAI DEFENDANTS had a duty to design and manufacture a vehicle that did not subject occupants to the risks of ejection or partial ejection during rollover. In particular, the HYUNDAI DEFENDANTS had a duty to design vehicles such that their various components worked in conjunction with one another to minimize the risks of full or partial ejection during rollover.

65.     The HYUNDAI DEFENDANTS negligently designed, tested, approved, manufactured, marketed, distributed, sold and supplied the Accent in that they failed to exercise reasonable care to prevent the Accent and its components from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner.   The HYUNDAI DEFENDANTS thereby breached the various duties set forth in this Count.

66.     The HYUNDAI DEFENDANTS' acts of negligence include but are not limited to the following:

      a.   The HYUNDAI DEFENDANTS engaged in inadequate testing and/or inadequate rollover crashworthiness testing of the Accent and similar vehicles.

b.  The HYUNDAI DEFENDANTS failed to design and manufacture a crashworthy vehicle with reasonable rollover crashworthiness protections, despite their recognition of the need to protect occupants in real world accidents.

c.  The HYUNDAI DEFENDANTS failed to properly design and "package" the Accent to provide adequate protection during rollovers.  In the subject accident, ELIZABETH SCHAAF suffered fatal injuries because the Accent's various components, including the door, door-latch system, safety restraint system, and airbags, failed to provide reasonable protection during the rollover.  The HYUNDAI DEFENDANTS knew these components had to work in unison as a system to be effective but failed to design them to do so.

d.  The HYUNDAI DEFENDANTS failed to equipped the Accent with a front passenger seatbelt system, including all of its components such as the belt webbing, retractors, anchors, and anchor points, as well as the overall design and geometry of the system, that was adequate to reasonably restrain and protect occupants when exposed to foreseeable crash forces in rollover accidents. Particularly, the seatbelt system permitted unreasonable and excessive excursion of occupants in rollover accidents.

e.  The HYUNDAI DEFENDANTS failed to equip the Accent with safer alternative seatbelt system designs and/or excursion-mitigating devices, including but not limited to rollover-activated pretensioners, cinching latch plates, and/or seat integrated belts.

f.   The HYUNDAI DEFENDANTS failed to equip the Accent with door and door latch system that were adequate to reasonably protect occupants during rollover accidents. Particularly, the design and manufacture of the Accent's front passenger door latch allowed and/or caused inadvertent release of the door latch and allowed the door to open, thus creating a portal of ejection when subjected to foreseeable crash forces, including forces sustained during a rollover.

g.   The HYUNDAI DEFENDANTS failed to equip the Accent with a passenger side airbag and side airbag system that were adequate to reasonably protect occupants during rollover accidents.   Particularly, the airbag system improperly activated the door latch system, failed to retain occupants inside the vehicle, and/or caused occupants to be ejected from and/or trapped outside the vehicle when subjected to foreseeable crash forces, including forces sustained during a rollover.

h.   The HYUNDAI DEFENDANTS failed to equip the Accent with electronic stability control technologies.

i.   The HYUNDAI DEFENDANTS failed to utilize alternative designs that could have provided better protection to occupants during rollovers.

j.   The HYUNDAI DEFENDANTS failed to provide adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the Accent and reasonable means to reduce such risks, dangers and harms.

67.   The factual basis for the HYUNDAI DEFENDANTS' negligence is also further specified in the First Claim for Relief.

68.   The HYUNDAI DEFENDANTS knew or should have known that the Accent

suffered from defects, as set forth in this Count and further in Count I, yet sold it anyway, without correcting the defects, guarding against them, or warning about them.

69.     At the time of the design and manufacture of the Accent, the HYUNDAI DEFENDANTS were aware of the dangers of rollover accidents.

70.     At the time of the design and manufacture of the Accent, the HYUNDAI DEFENDANTS knew, or in the exercise of reasonable care, should have known, of the dangers of the failure of the seatbelt system to provide good restraint, and of design characteristics necessary to assure that a seatbelt system will provide reasonable rollover crash protection.   The HYUNDAI DEFENDANTS nonetheless failed to exercise ordinary care to design and/or manufacture and adequate seatbelt system for the Accent and/or install an adequate seatbelt system into the Accent.

71.     At the time of the design and manufacture of the Accent, the HYUNDAI DEFENDANTS knew, or in the exercise of reasonable care, should have known, of the dangers of the failing to properly design a door and door latch system that provides reasonable protection against opening during a rollover accident.   The HYUNDAI DEFENDANTS nonetheless failed to exercise ordinary care to design and/or manufacture an adequate door latch system for the Accent, and/or install an adequate door latch system into the Accent.

72.     At the time of the design and manufacture of the Accent, the HYUNDAI DEFENDANTS knew, or in the exercise of reasonable care, should have known, of the dangers of the failing to properly design a side airbag and side airbag system that provides reasonable protection to occupants during a rollover accident.   The HYUNDAI DEFENDANTS nonetheless failed to exercise ordinary care to design and/or manufacture an adequate side airbag and side airbag system for the Accent and/or install an adequate side airbag and side airbag system into the

Page 18 of 44

Accent.

73.     At the time of the design and manufacture of the Accent, the HYUNDAI DEFENDANTS were aware of the importance of providing electronic stability control, but failed to exercise ordinary care to design and/or manufacture an electronic stability system for the Accent and/or install an electronic stability control system into the Accent.

74.     At the time of the design and manufacture of the Accent, the HYUNDAI DEFENDANTS knew, or in the exercise of reasonable care, should have known of alternative designs that were technologically and economically feasible and that would better protect occupants during rollovers, but the HYUNDAI DEFENDANTS chose not to incorporate these alternative designs.

75.     At the time of the design and manufacture of the Accent, the HYUNDAI DEFENDANTS knew, or in the exercise of reasonable care, should have known of the dangers of the failure to design its various components, such as the seatbelt system, the door latch system, and the side airbag system in such a way that would reasonably protect occupants in rollover accidents.

76.     At the time of the design and manufacture of the Accent, the HYUNDAI DEFENDANTS knew, or in the exercise of reasonable care, should have known that the Accent and its components were not designed, engineered, developed, tested, approved, manufactured, fabricated, installed, assembled, equipped, inspected, serviced, repaired, labeled, advertised, promoted, marketed, distributed, warranted, wholesaled, sold, supplied and/or provided in a reasonable manner, and that the warnings and instructions provided with the Accent, if any, were not reasonable.

77.     The HYUNDAI DEFENDANTS' negligence was a proximate cause of the fatal injuries to ELIZABETH SCHAAF and of injuries and damages to the Plaintiff in an undetermined amount in excess of $75,000.

78.     As a direct and proximate result of the HYUNDAI DEFENDANTS' negligent actions and omissions and the breach of their duties herein, Plaintiff's Decedent, ELIZABETH SCHAAF, sustained injuries of a personal and pecuniary nature, including conscious pain and suffering prior to her death, and had she survived she would have been entitled to bring this action for damages.   This action survives her pursuant to the provisions of the Survival Act, 755 ILCS 5/27-6.   JANET SCHWANINGER is the duly appointed Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, and she brings this cause of action, in part, pursuant to 735 ILCS 5/13-209.

79.     As a direct and proximate result of the HYUNDAI DEFENDANTS' negligent actions and omissions and breach of their duties herein, ELIZABETH SCHAAF was killed, and her next of kin have been permanently deprived of her love, companionship, society, consortium, and support to which they were entitled, and have suffered grief and have become liable for medical and funeral expenses all to their damages in a substantial amount.

80.     The HYUNDAI DEFENDANTS are liable for the harms and losses suffered by the heirs of ELIZABETH SCHAFF, and injuries suffered by ELIZABETH SCHAAF prior to her death, caused by the HYUNDAI DEFENDANTS' negligence.

**WHEREFORE**, Plaintiff JANET SCHWANINGER, individually, and as Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, demands judgment against the

HYUNDAI DEFENDANTS, and all of them, for an amount in excess of $75,000.00 plus costs of suit.

## COUNTS AGAINST THE SEATBELT DEFENDANTS

### COUNT III

### (*Strict Liability v. Seatbelt Defendants*)

COMES NOW the Plaintiff, by and through her undersigned attorneys, and for Count III of her Complaint against the SEATBELT DEFENDANTS, states:

81.     Plaintiff incorporates herein all allegations made elsewhere in this Complaint as if set forth verbatim.

82.     At all times material to this action, the SEATBELT DEFENDANTS were in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and supplying safety restraint systems for incorporation into motor vehicles, including the Accent.

83.     At the time the front passenger seat safety restraint system in the Accent (hereinafter the "Subject Seatbelt System") left the control of the SEATBELT DEFENDANTS, it was defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following subparagraphs:

a.   The Subject Seatbelt System was not crashworthy.

b.   The Subject Seatbelt System lacked reasonable rollover crashworthiness protections.

  c. The Subject Seatbelt System's overall design and "packaging" was inadequate to protect occupants during rollovers.

  d. The Subject Seatbelt System, including all of its components such as the belt webbing, retractors, anchors, and anchor points, as well as the overall design and geometry of the system, was inadequate to reasonably restrain and protect occupants when exposed to foreseeable crash forces in rollover accidents. Particularly, the Subject Seatbelt System permitted unreasonable and excessive excursion of occupants in rollover accidents.

  e. The Subject Seatbelt System lacked excursion-mitigating devices, including but not limited to rollover-activated pretensioners, cinching latch plates, and/or seat integrated belts.

  f. The Subject Seatbelt System lacked alternative designs that could have provided better protection to occupants during rollovers.

  g. The Subject Seatbelt System lacked adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the Subject Seatbelt System and reasonable means to reduce such risks, dangers and harms.

84. The Subject Seatbelt System was expected by the SEATBELT DEFENDANTS to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

85. ELIZABETH SCHAAF was a person who would reasonably be expected to use the Subject Seatbelt System.

86. The defects in the Subject Seatbelt System caused enhanced injuries to

ELIZABETH SCHAAF that were over and above those injuries that would have been caused by the accident if there had been no defects in the Subject Seatbelt System.

87.     The defects in the Subject Seatbelt System were a proximate cause of the fatal injuries to ELIZABETH SCHAAF and of injuries and damages to the Plaintiff in an undetermined amount in excess of $75,000.

88.     As a direct and proximate result of the defective, unreasonably dangerous condition of the Subject Seatbelt System, Plaintiff's Decedent, ELIZABETH SCHAAF, sustained injuries of a personal and pecuniary nature, including conscious pain and suffering prior to her death, and had she survived, she would have been entitled to bring this action for damages, and this action survives her pursuant to the provisions of the Survival Act, 755 ILCS 5/27-6.   JANET SCHWANINGER is the duly appointed Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, and she brings this cause of action, in part, pursuant to 735 ILCS 5/13-209.

89.     As a direct and proximate result of the defective, unreasonably dangerous condition of the Subject Seatbelt System, ELIZABETH SCHAAF was killed, and her next of kin have been permanently deprived of her love, companionship, society, consortium, and support to which they were entitled, they have suffered grief, and have become liable for medical and funeral expenses all to their damages in a substantial amount.

90.     The SEATBELT DEFENDANTS are strictly liable for the harms and losses suffered by the heirs of ELIZABETH SCHAFF, and for injuries suffered by ELIZABETH SCHAAF prior to her death, caused by defects and inadequacies in the design and manufacture of the Subject Seatbelt System.

**WHEREFORE**, Plaintiff JANET SCHWANINGER, individually, and as Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, demands judgment against the SEATBELT DEFENDANTS, and all of them, for an amount in excess of $75,000.00 plus costs of suit.

## COUNT IV

### (*Negligence v. Seatbelt Defendants*)

COMES NOW the Plaintiff, by and through her undersigned attorneys, and for Count IV of her Complaint against the SEATBELT DEFENDANTS, states:

91.     Plaintiff incorporates herein all allegations made elsewhere in this Complaint as if set forth verbatim.

92.     At all times material to this action, the SEATBELT DEFENDANTS were in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and supplying safety restraint systems for incorporation into motor vehicles, including the Accent.

93.     The Subject Seatbelt System was expected by the SEATBELT DEFENDANTS to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

94.     ELIZABETH SCHAAF was a person who would reasonably be expected to use the Subject Seatbelt System.

95.     The SEATBELT DEFENDANTS had a duty to design and manufacture a safety restraint system that did not subject occupants to unreasonable risks of harm during reasonably foreseeable usage of such system.

96.     The SEATBELT DEFENDANTS had a duty to design and manufacture a safety

restraint system that would adequately and reasonably protect occupants when exposed to foreseeable crash forces in rollover accidents.

97.     The SEATBELT DEFENDANTS had a duty to design and manufacture a safety restraint system that did not subject occupants to the risks of ejection or partial ejection during rollover. In particular, the SEATBELT DEFENDANTS had a duty to design their product such that it worked in conjunction with other vehicle components to minimize the risks of full or partial ejection during rollover.

98.     The SEATBELT DEFENDANTS negligently designed, tested, approved, manufactured, marketed, distributed, sold and supplied the Subject Seatbelt System in that they failed to exercise reasonable care to prevent the Subject Seatbelt System and its components from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner.   The SEATBELT DEFENDANTS thereby breached the various duties set forth in this Count.

99.     The SEATBELT DEFENDANTS' acts of negligence include but are not limited to the following:

> a.  The SEATBELT DEFENDANTS engaged in inadequate testing and/or inadequate rollover crashworthiness testing of the Subject Seatbelt System and similar safety restraint systems and components.
>
> b.  The SEATBELT DEFENDANTS failed to design and manufacture a crashworthy safety restraint system that provided reasonable rollover crashworthiness protections, despite their recognition of the need to protect occupants in real world accidents.

c.  The SEATBELT DEFENDANTS failed to properly design and "package" the Subject Seatbelt System to provide adequate protection during rollovers.   In the subject accident, ELIZABETH SCHAAF suffered fatal injuries because the Subject Seatbelt System failed to provide reasonable protection during the rollover.   The SEATBELT DEFENDANTS knew their product had to work in unison with other vehicle components but failed to design it to do so.

d.  The SEATBELT DEFENDANTS failed to provide a front passenger seatbelt system, including all of its components such as the belt webbing, retractors, anchors, and anchor points, as well as the overall design and geometry of the system, that was adequate to reasonably restrain and protect occupants when exposed to foreseeable crash forces in rollover accidents. Particularly, the Subject Seatbelt System permitted unreasonable and excessive excursion of occupants in rollover accidents.

e.  The SEATBELT DEFENDANTS failed to equip the Subject Seatbelt System with safer alternative designs and/or excursion-mitigating devices, including but not limited to rollover-activated pretensioners, cinching latch plates, and/or seat integrated belts.

f.  The SEATBELT DEFENDANTS failed to utilize alternative designs that could have provided better protection to occupants during rollovers.

g.  The SEATBELT DEFENDANTS failed to provide adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the

Subject Seatbelt System and reasonable means to reduce such risks, dangers and harms.

100.    The factual basis for the SEATBELT DEFENDANTS' negligence is also further specified in the Third Claim for Relief.

101.    The SEATBELT DEFENDANTS knew or should have known that the Subject Seatbelt System suffered from defects, as set forth in this Count and further in Count III, yet supplied and/or sold it anyway, without correcting the defects, guarding against them, or warning about them.

102.    At the time of the design and manufacture of Subject Seatbelt System, the SEATBELT DEFENDANTS were aware of the dangers of rollover accidents.

103.    At the time of the design and manufacture of the Accent, the SEATBELT DEFENDANTS knew, or in the exercise of reasonable care, should have known, of the dangers of the failure of the seatbelt system to provide good restraint, and of design characteristics necessary to assure that a seatbelt system will provide reasonable rollover crash protection.   The SEATBELT DEFENDANTS nonetheless failed to exercise ordinary care to design, manufacture, and/or supply an adequate seatbelt system for the Accent and/or install an adequate seatbelt system into the Accent.

104.    At the time of the design and manufacture of the Subject Seatbelt System, the SEATBELT DEFENDANTS knew, or in the exercise of reasonable care, should have known of alternative designs that were technologically and economically feasible and that would better protect occupants during rollovers, but the SEATBELT DEFENDANTS chose not to incorporate these alternative designs.

105.     At the time of the design and manufacture of the Subject Seatbelt System, the SEATBELT DEFENDANTS knew, or in the exercise of reasonable care, should have known of the dangers of the failure to design their seatbelt system to work together with other vehicle components in such a way that would reasonably protect occupants in rollover accidents.

106.     At the time of the design and manufacture of the Subject Seatbelt System, the SEATBELT DEFENDANTS knew, or in the exercise of reasonable care, should have known that the Subject Seatbelt System and its components were not designed, engineered, developed, tested, approved, manufactured, fabricated, installed, assembled, equipped, inspected, serviced, repaired, labeled, advertised, promoted, marketed, distributed, warranted, wholesaled, sold, supplied and/or provided in a reasonable manner, and that the warnings and instructions provided with the Subject Seatbelt System, if any, were not reasonable.

107.     The SEATBELT DEFENDANTS' negligence was a proximate cause of the fatal injuries to ELIZABETH SCHAAF and of injuries and damages to the Plaintiff in an undetermined amount in excess of $75,000.

108.     As a direct and proximate result of the SEATBELT DEFENDANTS' negligent actions and omissions and the breach of their duties herein, Plaintiff's Decedent, ELIZABETH SCHAAF, sustained injuries of a personal and pecuniary nature, including conscious pain and suffering prior to her death, and had she survived she would have been entitled to bring this action for damages.   This action survives her pursuant to the provisions of the Survival Act, 755 ILCS 5/27-6.   JANET SCHWANINGER is the duly appointed Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, and she brings this cause of action, in part, pursuant to 735 ILCS 5/13-209.

109.     As a direct and proximate result of the SEATBELT DEFENDANTS' negligent actions and omissions and breach of their duties herein, ELIZABETH SCHAAF was killed, and her next of kin have been permanently deprived of her love, companionship, society, consortium, and support to which they were entitled, and have suffered grief and have become liable for medical and funeral expenses all to their damages in a substantial amount.

110.     The SEATBELT DEFENDANTS are liable for the harms and losses suffered by the heirs of ELIZABETH SCHAFF, and injuries suffered by ELIZABETH SCHAAF prior to her death, caused by the SEATBELT DEFENDANTS' negligence.

**WHEREFORE**, Plaintiff JANET SCHWANINGER, individually, and as Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, demands judgment against the SEATBELT DEFENDANTS, and all of them, for an amount in excess of $75,000.00 plus costs of suit.

## COUNTS AGAINST DOOR LATCH DEFENDANTS

### COUNT V

### (*Strict Liability v. Door Latch Defendants*)

COMES NOW the Plaintiff, by and through her undersigned attorneys, and for Count V of her Complaint against the DOOR LATCH DEFENDANTS, states:

111.     Plaintiff incorporates herein all allegations made elsewhere in this Complaint as if set forth verbatim.

112.     At all times material to this action, the DOOR LATCH DEFENDANTS were in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and supplying door latch systems and their components for incorporation into motor vehicles,

Page 29 of 44

including the Accent.

113.    At the time the front passenger door latch system in the Accent (hereinafter the "Subject Door Latch System") left the control of the DOOR LATCH DEFENDANTS, it was defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following subparagraphs:

    a.  The Subject Door Latch System was not crashworthy.

    b.  The Subject Door Latch System lacked reasonable rollover crashworthiness protections.

    c.  The Subject Door Latch System's overall design and "packaging" was inadequate to protect occupants during rollovers.

    d.  The Subject Door Latch System was inadequate to reasonably protect occupants during rollover accidents. Particularly, the Subject Door Latch System's design and manufacture allowed and/or caused inadvertent release of the door latch and allowed the door to open, thus creating a portal of ejection when subjected to foreseeable crash forces, including forces sustained during a rollover.

    e.  The Subject Door Latch System lacked alternative designs that could have provided better protection to occupants during rollovers.

    f.  The Subject Door Latch System lacked adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the Subject Door Latch System and reasonable means to reduce such risks, dangers and harms.

114.    The Subject Door Latch System was expected by the DOOR LATCH DEFENDANTS to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

115.    ELIZABETH SCHAAF was a person who would reasonably be expected to use the Subject Door Latch System.

116.    The defects in the Subject Door Latch System caused enhanced injuries to ELIZABETH SCHAAF that were over and above those injuries that would have been caused by the accident if there had been no defects in the Subject Door Latch System.

117.    The defects in the Subject Door Latch System were a proximate cause of the fatal injuries to ELIZABETH SCHAAF and of injuries and damages to the Plaintiff in an undetermined amount in excess of $75,000.

118.    As a direct and proximate result of the defective, unreasonably dangerous condition of the Subject Door Latch System, Plaintiff's Decedent, ELIZABETH SCHAAF, sustained injuries of a personal and pecuniary nature, including conscious pain and suffering prior to her death, and had she survived, she would have been entitled to bring this action for damages, and this action survives her pursuant to the provisions of the Survival Act, 755 ILCS 5/27-6.   JANET SCHWANINGER is the duly appointed Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, and she brings this cause of action, in part, pursuant to 735 ILCS 5/13-209.

119.    As a direct and proximate result of the defective, unreasonably dangerous condition of the Subject Door Latch System, ELIZABETH SCHAAF was killed, and her next of kin have been permanently deprived of her love, companionship, society, consortium, and support to which they were entitled, they have suffered grief, and have become liable for medical and funeral

expenses all to their damages in a substantial amount.

120.    The DOOR LATCH DEFENDANTS are strictly liable for the harms and losses suffered by the heirs of ELIZABETH SCHAAF, and for injuries suffered by ELIZABETH SCHAAF prior to her death, caused by defects and inadequacies in the design and manufacture of the Subject Door Latch System.

**WHEREFORE**, Plaintiff JANET SCHWANINGER, individually, and as Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, demands judgment against the DOOR LATCH DEFENDANTS, and each of them, for an amount in excess of $75,000.00 plus costs of suit.

## COUNT VI

### (*Negligence v. Door Latch Defendants*)

COMES NOW the Plaintiff, by and through her undersigned attorneys, and for Count VI of her Complaint against DOOR LATCH DEFENDANTS, states:

121.    Plaintiff incorporates herein all allegations made elsewhere in this Complaint as if set forth verbatim.

122.    At all times material to this action, the DOOR LATCH DEFENDANTS were in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and supplying door latch systems and their components for incorporation into motor vehicles, including the Accent.

123.    The Subject Door Latch System was expected by the DOOR LATCH DEFENDANTS to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

124.    ELIZABETH SCHAAF was a person who would reasonably be expected to use the Subject Door Latch System.

125.    The DOOR LATCH DEFENDANTS had a duty to design and manufacture a door latch system that did not subject occupants to unreasonable risks of harm during reasonably foreseeable usage of such system.

126.    The DOOR LATCH DEFENDANTS had a duty to design and manufacture a door latch system that would adequately and reasonably protect occupants when exposed to foreseeable crash forces in rollover accidents.

127.    The DOOR LATCH DEFENDANTS had a duty to design and manufacture a door latch system that did not subject occupants to the risks of ejection or partial ejection during rollover. In particular, the DOOR LATCH DEFENDANTS had a duty to design the Subject Door Latch System such that it worked in conjunction with other vehicle components to minimize the risks of full or partial ejection during rollover.

128.    The DOOR LATCH DEFENDANTS negligently designed, tested, approved, manufactured, marketed, distributed, sold and supplied the Subject Door Latch System in that they failed to exercise reasonable care to prevent the Subject Door Latch System and its components from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner.   The DOOR LATCH DEFENDANTS thereby breached the various duties set forth in this Count.

129.    The DOOR LATCH DEFENDANTS' acts of negligence include but are not limited to the following:

a.  The DOOR LATCH DEFENDANTS engaged in inadequate testing and/or inadequate rollover crashworthiness testing of the Subject Door Latch System and similar door latch systems and components.

b.  The DOOR LATCH DEFENDANTS failed to design and manufacture a crashworthy door latch system with reasonable rollover crashworthiness protections, despite their recognition of the need to protect occupants in real world accidents.

h.  The DOOR LATCH DEFENDANTS failed to properly design and "package" the Subject Door Latch System to provide adequate protection during rollovers. In the subject accident, ELIZABETH SCHAAF suffered fatal injuries because the Subject Door Latch System failed to provide reasonable protection during the rollover.   The DOOR LATCH DEFENDANTS knew their product had to work in unison with other vehicle components but failed to design it to do so.

c.  The DOOR LATCH DEFENDANTS failed to provide a door latch system that was adequate to reasonably protect occupants during rollover accidents. Particularly, the Subject Door Latch System's design and manufacture allowed and/or caused inadvertent release of the door latch and allowed the door to open, thus creating a portal of ejection when subjected to foreseeable crash forces, including forces sustained during a rollover.

d.  The DOOR LATCH DEFENDANTS failed to utilize alternative designs that could have provided better protection to occupants during rollovers.

    e.   The DOOR LATCH DEFENDANTS failed to provide adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the Subject Door Latch System and reasonable means to reduce such risks, dangers and harms.

130.    The factual basis for the DOOR LATCH DEFENDANTS' negligence is also further specified in the Fifth Claim for Relief.

131.    The DOOR LATCH DEFENDANTS knew or should have known that the Subject Door Latch System suffered from defects, as set forth in this Count and further in Count V, yet supplied and/or sold it anyway, without correcting the defects, guarding against them, or warning about them.

132.    At the time of the design and manufacture of the Subject Door Latch System, the DOOR LATCH DEFENDANTS were aware of the dangers of rollover accidents.

133.    At the time of the design and manufacture of the Subject Door Latch System, the DOOR LATCH DEFENDANTS knew, or in the exercise of reasonable care, should have known, of the dangers of the failing to properly design a door latch system that provides reasonable protection against opening during a rollover accident.  The DOOR LATCH DEFENDANTS nonetheless failed to exercise ordinary care to design, manufacture, and/or supply an adequate door latch system for the Accent and/or install an adequate door latch system into the Accent.

134.    At the time of the design and manufacture of the Subject Door Latch System, the DOOR LATCH DEFENDANTS knew, or in the exercise of reasonable care, should have known of alternative designs that were technologically and economically feasible and that would better protect occupants during rollovers, but the DOOR LATCH DEFENDANTS chose not to

incorporate these alternative designs.

135.    At the time of the design and manufacture of the Subject Door Latch System, the

DOOR LATCH DEFENDANTS knew, or in the exercise of reasonable care, should have known

of the dangers of the failure to design their door latch system to work together with other vehicle

components in such a way that would reasonably protect occupants in rollover accidents.

136.    At the time of the design and manufacture of the Subject Door Latch System, the

DOOR LATCH DEFENDANTS knew, or in the exercise of reasonable care, should have known

that the Subject Door Latch System and its components were not designed, engineered, developed,

tested, approved, manufactured, fabricated, installed, assembled, equipped, inspected, serviced,

repaired, labeled, advertised, promoted, marketed, distributed, warranted, wholesaled, sold,

supplied and/or provided in a reasonable manner, and that the warnings and instructions provided

with the Subject Door Latch System, if any, were not reasonable.

137.    The DOOR LATCH DEFENDANTS' negligence was a proximate cause of the

fatal injuries to ELIZABETH SCHAAF and of injuries and damages to the Plaintiff in an

undetermined amount in excess of $75,000.

138.    As a direct and proximate result of the DOOR LATCH DEFENDANTS' negligent

actions and omissions and the breach of their duties herein, Plaintiff's Decedent, ELIZABETH

SCHAAF, sustained injuries of a personal and pecuniary nature, including conscious pain and

suffering prior to her death, and had she survived she would have been entitled to bring this action

for damages.   This action survives her pursuant to the provisions of the Survival Act, 755 ILCS

5/27-6.   JANET SCHWANINGER is the duly appointed Independent Administratrix of the Estate

of ELIZABETH SCHAAF, deceased, and she brings this cause of action, in part, pursuant to 735

ILCS 5/13-209.

139.    As a direct and proximate result of the DOOR LATCH DEFENDANTS' negligent actions and omissions and breach of their duties herein, ELIZABETH SCHAAF was killed, and her next of kin have been permanently deprived of her love, companionship, society, consortium, and support to which they were entitled, and have suffered grief and have become liable for medical and funeral expenses all to their damages in a substantial amount.

140.    The DOOR LATCH DEFENDANTS are liable for the harms and losses suffered by the heirs of ELIZABETH SCHAAF, and injuries suffered by ELIZABETH SCHAAF prior to her death, caused by the DOOR LATCH DEFENDANTS' negligence.

**WHEREFORE**, Plaintiff JANET SCHWANINGER, individually, and as Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, demands judgment against the DOOR LATCH DEFENDANTS, and each of them, for an amount in excess of $75,000.00 plus costs of suit.

<u>**COUNTS AGAINST THE AIRBAG DEFENDANTS**</u>

**COUNT VII**

(***Strict Liability v. Airbag Defendants***)

COMES NOW the Plaintiff, by and through her undersigned attorneys, and for Count VII of her Complaint against the AIRBAG DEFENDANTS, states:

141.    Plaintiff incorporates herein all allegations made elsewhere in this Complaint as if set forth verbatim.

142.    At all times material to this action, the AIRBAG DEFENDANTS were in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and

supplying airbag systems and their components for incorporation into motor vehicles, including the Accent.

143.    At the time the front passenger side airbag system in the Accent (hereinafter the "Subject Airbag System") left the control of the AIRBAG DEFENDANTS, it was defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following subparagraphs:

a.  The Subject Airbag System was not crashworthy.

b.  The Subject Airbag System lacked reasonable rollover crashworthiness protections.

c.  The Subject Airbag System's overall design and "packaging" was inadequate to protect occupants during rollovers.

d.  The Subject Airbag System was inadequate to reasonably protect occupants during rollover accidents.   Particularly, the airbag system improperly activated the door latch system, failed to retain occupants inside the vehicle, and/or caused occupants to be ejected from and/or trapped outside the vehicle when subjected to foreseeable crash forces, including forces sustained during a rollover.

e.  The Subject Airbag System lacked alternative designs that could have provided better protection to occupants during rollovers.

f.   The Subject Airbag System lacked adequate and sufficient warnings and

instructions about the risks, dangers and harms presented by the Subject

Airbag System and reasonable means to reduce such risks, dangers and harms.

144.   The Subject Airbag System was expected by the AIRBAG DEFENDANTS to

reach, and did reach, the user without substantial change in the condition in which it was placed

on the market.

145.   ELIZABETH SCHAAF was a person who would reasonably be expected to use the

Subject Airbag System.

146.   The defects in the Subject Airbag System caused enhanced injuries to ELIZABETH

SCHAAF that were over and above those injuries that would have been caused by the accident if

there had been no defects in the Subject Airbag System.

147.   The defects in the Subject Airbag System were a proximate cause of the fatal

injuries to ELIZABETH SCHAAF and of injuries and damages to the Plaintiff in an undetermined

amount in excess of $75,000.

148.   As a direct and proximate result of the defective, unreasonably dangerous condition

of the Subject Airbag System, Plaintiff's Decedent, ELIZABETH SCHAAF, sustained injuries of

a personal and pecuniary nature, including conscious pain and suffering prior to her death, and had

she survived, she would have been entitled to bring this action for damages, and this action survives

her pursuant to the provisions of the Survival Act, 755 ILCS 5/27-6.   JANET SCHWANINGER

is the duly appointed Independent Administratrix of the Estate of ELIZABETH SCHAAF,

deceased, and she brings this cause of action, in part, pursuant to 735 ILCS 5/13-209.

149.   As a direct and proximate result of the defective, unreasonably dangerous condition

of the Subject Airbag System, ELIZABETH SCHAAF was killed, and her next of kin have been permanently deprived of her love, companionship, society, consortium, and support to which they were entitled, they have suffered grief, and have become liable for medical and funeral expenses all to their damages in a substantial amount.

150. The AIRBAG DEFENDANTS are strictly liable for the harms and losses suffered by the heirs of ELIZABETH SCHAFF, and for injuries suffered by ELIZABETH SCHAAF prior to her death, caused by defects and inadequacies in the design and manufacture of the Subject Airbag System.

**WHEREFORE**, Plaintiff JANET SCHWANINGER, individually, and as Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, demands judgment against the AIRBAG DEFENDANTS, and all of them, for an amount in excess of $75,000.00 plus costs of suit.

## COUNT VIII

### (*Negligence v. Airbag Defendants*)

COMES NOW the Plaintiff, by and through her undersigned attorneys, and for Count VIII of her Complaint against the AIRBAG DEFENDANTS, states:

151. Plaintiff incorporates herein all allegations made elsewhere in this Complaint as if set forth verbatim.

152. At all times material to this action, the AIRBAG DEFENDANTS were in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and supplying airbag systems and their components for incorporation into motor vehicles, including the Accent.

153.    The Subject Airbag System was expected by the AIRBAG DEFENDANTS to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

154.    ELIZABETH SCHAAF was a person who would reasonably be expected to use the Subject Airbag System.

155.    The AIRBAG DEFENDANTS had a duty to design and manufacture an airbag system that did not subject occupants to unreasonable risks of harm during reasonably foreseeable usage of the vehicle.

156.    The AIRBAG DEFENDANTS had a duty to design and manufacture an airbag system that would adequately and reasonably protect occupants when exposed to foreseeable crash forces in rollover accidents.

157.    The AIRBAG DEFENDANTS had a duty to design and manufacture an airbag system that did not subject occupants to the risks of ejection or partial ejection during rollover. In particular, the AIRBAG DEFENDANTS had a duty to design the Subject Airbag System such that it worked in conjunction with other vehicle components to minimize the risks of full or partial ejection during rollover.

158.    The AIRBAG DEFENDANTS negligently designed, tested, approved, manufactured, marketed, distributed, sold and supplied the Subject Airbag System in that they failed to exercise reasonable care to prevent the Subject Airbag System and its components from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner. The AIRBAG DEFENDANTS thereby breached the various duties set forth in this Count.

159.   The AIRBAG DEFENDANTS' acts of negligence include but are not limited to the following:

a.   The AIRBAG DEFENDANTS engaged in inadequate testing and/or inadequate rollover crashworthiness testing of the Subject Airbag System and similar airbag systems and components.

b.   The AIRBAG DEFENDANTS failed to design and manufacture a crashworthy airbag system with reasonable rollover crashworthiness protections, despite their recognition of the need to protect occupants in real world accidents.

c.   The AIRBAG DEFENDANTS failed to properly design and "package" the Subject Airbag System to provide adequate protection during rollovers.   In the subject accident, ELIZABETH SCHAAF suffered fatal injuries because the Subject Airbag System failed to provide reasonable protection during the rollover.   The AIRBAG DEFENDANTS knew their product had to work in unison with other vehicle components but failed to design it to do so.

d.   The AIRBAG DEFENDANTS failed to provide a passenger side airbag and side airbag system that were adequate to reasonably protect occupants during rollover accidents.   Particularly, the Subject Airbag System improperly activated the door latch system, failed to retain occupants inside the vehicle, and/or caused occupants to be ejected from and/or trapped outside the vehicle when subjected to foreseeable crash forces, including forces sustained during a rollover.

e.   The AIRBAG DEFENDANTS failed to utilize alternative designs that could have provided better protection to occupants during rollovers.

f. The AIRBAG DEFENDANTS failed to provide adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the Subject Airbag System and reasonable means to reduce such risks, dangers and harms.

160. The factual basis for the AIRBAG DEFENDANTS' negligence is also further specified in the Seventh Claim for Relief.

161. The AIRBAG DEFENDANTS knew or should have known that the Subject Airbag System suffered from defects, as set forth in this Count and further in Count VII, yet supplied and/or sold it anyway, without correcting the defects, guarding against them, or warning about them.

162. At the time of the design and manufacture of the Subject Airbag System, the AIRBAG DEFENDANTS were aware of the dangers of rollover accidents.

163. At the time of the design and manufacture of the Subject Airbag System, the AIRBAG DEFENDANTS knew, or in the exercise of reasonable care, should have known, of the dangers of the failing to properly design a side airbag and side airbag system that provides reasonable protection to occupants during a rollover accident. The AIRBAG DEFENDANTS nonetheless failed to exercise ordinary care to design, manufacture, and/or supply an adequate airbag system for the Accent and/or install an adequate airbag system into the Accent.

164. At the time of the design and manufacture of the Subject Airbag System, the AIRBAG DEFENDANTS knew, or in the exercise of reasonable care, should have known of alternative designs that were technologically and economically feasible and that would better protect occupants during rollovers, but the AIRBAG DEFENDANTS chose not to incorporate these alternative designs.

165.   At the time of the design and manufacture of the Subject Airbag System, the AIRBAG DEFENDANTS knew, or in the exercise of reasonable care, should have known of the dangers of the failure to design their airbag system to work together with other vehicle components in such a way that would reasonably protect occupants in rollover accidents.

166.   At the time of the design and manufacture of the Subject Airbag System, the AIRBAG DEFENDANTS knew, or in the exercise of reasonable care, should have known that the Subject Airbag System and its components were not designed, engineered, developed, tested, approved, manufactured, fabricated, installed, assembled, equipped, inspected, serviced, repaired, labeled, advertised, promoted, marketed, distributed, warranted, wholesaled, sold, supplied and/or provided in a reasonable manner, and that the warnings and instructions provided with the Subject Airbag System, if any, were not reasonable.

167.   The AIRBAG DEFENDANTS' negligence was a proximate cause of the fatal injuries to ELIZABETH SCHAAF and of injuries and damages to the Plaintiff in an undetermined amount in excess of $75,000.

168.   As a direct and proximate result of the AIRBAG DEFENDANTS' negligent actions and omissions and the breach of their duties herein, Plaintiff's Decedent, ELIZABETH SCHAAF, sustained injuries of a personal and pecuniary nature, including conscious pain and suffering prior to her death, and had she survived she would have been entitled to bring this action for damages. This action survives her pursuant to the provisions of the Survival Act, 755 ILCS 5/27-6.   JANET SCHWANINGER is the duly appointed Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, and she brings this cause of action, in part, pursuant to 735 ILCS 5/13-209.

169.   As a direct and proximate result of the AIRBAG DEFENDANTS' negligent actions

and omissions and breach of their duties herein, ELIZABETH SCHAAF was killed, and her next of kin have been permanently deprived of her love, companionship, society, consortium, and support to which they were entitled, and have suffered grief and have become liable for medical and funeral expenses all to their damages in a substantial amount.

170.    The AIRBAG DEFENDANTS are liable for the harms and losses suffered by the heirs of ELIZABETH SCHAFF, and injuries suffered by ELIZABETH SCHAAF prior to her death, caused by the AIRBAG DEFENDANTS' negligence.

**WHEREFORE**, Plaintiff JANET SCHWANINGER, individually, and as Independent Administratrix of the Estate of ELIZABETH SCHAAF, deceased, demands judgment against the AIRBAG DEFENDANTS, and all of them, for an amount in excess of $75,000.00 plus costs of suit.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

*/s/James L. Gilbert*
*JAMES L. GILBERT*
CO Reg. No. 4856
Admitted *Pro Hac Vice*
*Attorney for Plaintiff*

**THE GILBERT LAW GROUP, P.C.**
**5400 WARD ROAD, BLDG. IV, SUITE 200**
**ARVADA, CO 80220**
**303/431-1111**
**303/431-1633 (Facsimile)**

**- and –**

**KEEFE & KEEFE, P.C.**
**ATTORNEY AT LAW**
**#6 EXECUTIVE WOODS COURT**
**BELLEVILLE, ILLINOIS   62226**
**618/236-2221**
**618/236-2194 (Facsimile)**